UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER E. SETZER,

               Plaintiff,

   v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

               Defendant.

Case No. 3:10-cv-05766-RJB-KLS

REPORT AND RECOMMENDATION

Noted for November 4, 2011

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and this matter be remanded for further administrative proceedings.

<u>FACTUAL AND PROCEDURAL HISTORY</u>

On January 20, 2004, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging disability as of July 27, 2000, due to injuries to his right side (including his back, shoulder and neck), continuous severe pain and depression. <u>See</u> Administrative Record ("AR") 19, 113, 123, 656. Both applications were denied upon initial

REPORT AND RECOMMENDATION - 1

administrative review and on reconsideration. See AR 19, 89, 98, 656. A hearing was held before an administrative law judge ("ALJ") on September 19, 2007, at which plaintiff, represented by counsel, appeared and testified, and at which a vocational expert also appeared, but did not testify. See AR 623-30.

A second hearing was held before a different ALJ on March 13, 2008, at which plaintiff, represented by counsel, again appeared and testified, as did a different vocational expert. See AR 631-52. On March 21, 2008, that ALJ issued a decision in which he determined plaintiff to be not disabled. See AR 19-29. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 22, 2009, making the ALJ's decision defendant's final decision. See AR 9; see also 20 C.F.R. § 404.981, § 416.1481. Plaintiff appealed that decision to this Court, which – based on the stipulation of the parties – remanded the matter back to defendant for further administrative proceedings. See AR 685-89.

The Appeals Council, in turn, remanded the matter to the same ALJ. See AR 684-84A. A third hearing was held before that ALJ on June 11, 2010, at which plaintiff, represented by counsel, once more appeared but did not testify, and at which a third different vocational expert appeared and testified. See AR 803-22. On June 21, 2010, the ALJ issued a second decision, in which he again found plaintiff to be not disabled. See AR 656-668. It does not appear from the record that the Appeals Council assumed jurisdiction of the case. See 20 C.F.R. § 404.984, § 416.1484. The ALJ's decision therefore became defendant's final decision after sixty days. Id.

On October 19, 2010, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1. The administrative record was filed with the Court on December 29, 2010. See ECF #8. The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

REPORT AND RECOMMENDATION - 2

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings, because the ALJ erred: (1) in refusing to allow plaintiff to testify at the last hearing in violation of his due process rights; (2) in failing to include in his residual functional capacity all of his mental limitations; and (3) in finding him to be capable of performing other jobs existing in significant numbers in the national economy. The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I. The ALJ's Refusal to Let Plaintiff Testify

Plaintiff argues that after this Court vacated the ALJ's prior decision due to his "failure to properly evaluate the evidence, the ALJ scheduled a new hearing in accordance with the Court's remand order," but "then flatly refused to allow [him] to provide any testimony" during the third

REPORT AND RECOMMENDATION - 3

hearing that was held. ECF #14, p. 12. The ALJ's refusal here, plaintiff asserts, not only violates his due process rights, but defendant's own regulations, which clearly give claimants the right to call witnesses and present testimony before an ALJ.

Plaintiff, however, misconstrues not only the nature of the remand order in this case, but the scope of his right to present testimony both in relation to his due process rights and the rights to do so granted by defendant's regulations. First, as noted above, this case was remanded upon the stipulation of the parties. The stipulated motion the parties filed stated that "[u]pon remand, the [ALJ] shall hold a supplemental hearing with further evidence *from a vocational expert*." AR 688 (emphasis added). In its Order for Remand, the Court also stated that "[u]pon remand, the [ALJ] shall hold a supplemental hearing with further evidence *from a vocational expert*." AR 687 (emphasis added). Thus, nothing in either the stipulated motion or the Court's own remand order indicates, as plaintiff claims, that the ALJ's prior decision was being remanded "due to the ALJ's failure to properly evaluate the evidence." ECF #14, p. 12.

In the order remanding the case issued in response to this Court's order, furthermore, the Appeals Council stated in relevant part as follows:

> The Appeals Council hereby vacates the final decision of the Commissioner of Social Security and remands this case to an Administrative Law Judge for further proceedings consistent with the order of the court.
>
> The Administrative Law Judge found that the claimant could not perform his past relevant work but that there are other jobs that exist in significant numbers in the national economy which he could perform. The Administrative Law Judge cited the jobs of security guard, companion, and food assembler. Information in the Dictionary of Occupational Titles indicates that these jobs are semiskilled. The Administrative Law Judge did not identify any skills that the claimant had acquired in the performance of his past work which would be transferable to the jobs cited in the decision. Therefore, the finding that the claimant could perform those other jobs was not supported.
>
> Upon remand the Administrative Law Judge will:

REPORT AND RECOMMENDATION - 4

- Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

In compliance with the above, the Administrative Law Judge will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision.

AR 684-84A. Not surprisingly then, the ALJ began the third hearing – the one that was held on remand – by stating that the "remand order" instructed him "to take vocational expert testimony, and that's exactly what we are going to do." AR 805. Nor is it surprising that the ALJ declined to accept the statement of plaintiff's attorney, that the purpose of the remand order was "to hold a supplemental hearing *including* with further testimony from a vocational expert" (id. (emphasis added)), as it is clear that the sole purpose of remand here was to obtain further vocational expert testimony, and not evidence from other sources, such as plaintiff.

Plaintiff cites Gonzalez v. Sullivan, 914 F.2d 1197 (9th Cir. 1990), for the proposition that an applicant for Social Security benefits who is unable to work due to a disability has a "significant property interest in receiving benefits." Id. at 1203. But that holding says nothing about the type of process to which plaintiff is due in this case. Nor does Mathews v. Eldridge, 424 U.S. 319 (1976), to which plaintiff also points, noting that the Supreme Court stated therein that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Id. at 333.

REPORT AND RECOMMENDATION - 5

Plaintiff contends he was denied the opportunity to be heard in a meaningful manner by the ALJ's refusal to allow him to testify at the remand hearing. But Mathews does not set forth any requirement that a claimant be allowed to testify at every hearing, no matter the purpose of that hearing. Rather, as the Supreme Court noted in that case merely that "*some form of hearing* is required before an individual is finally deprived of a property interest." Id. (emphasis added). Plaintiff had such a hearing in this case, namely the hearing held on March 13, 2008, at which as noted above plaintiff already had appeared and testified. See AR 631-52. Thus, the ALJ was not unreasonable in stating he did not "see any reason to hear his testimony again," particularly since there was "a verbatim transcript of [that] earlier testimony." AR 805.

Plaintiff argues the ALJ's refusal to allow him to testify again at the remand hearing was "particularly troublesome" in light of his attorney's explanation that plaintiff "wished to address some additional issues that had arisen since the prior hearing." ECF #21, p. 2. The ALJ's refusal thus denied him his "due process right to be heard in a meaningful manner." Id. But as noted by defendant, the ALJ's refusal to allow plaintiff to testify at a hearing specifically convened for the purpose of obtaining additional vocational expert testimony, did not prevent him from presenting those issues to the ALJ by other means, such as via the submission of a written statement. See 20 C.F.R. § 404.949 ("You or a person you designate to act as your representative may . . . present a written summary of your case, or . . . enter written statements about the facts and law material to your case in the record."), § 416.1449 (same).

In other words, plaintiff has failed to show he has been deprived of his due process right to be meaningfully heard. Nor do defendant's other regulations help plaintiff here. It is true they provide that a claimant – or his or her representative – may "present witnesses and question any witnesses" at the disability hearing. See 20 C.F.R. § 404.916(b)(4), § 416.1416(b)(4); see also 20

REPORT AND RECOMMENDATION - 6

C.F.R. § 404.929, § 416.1429. But these regulations only refer to disability hearings held after an initial, revised or reconsidered adverse administrative determination has been made, not to a supplemental hearing ordered following judicial review. See id.; see also 20 C.F.R. § 404.914, § 416.1414, § 404.930, § 416.1430.

In other words, defendant's regulations do not allow for the presentation and questioning of any witnesses at a supplemental administrative hearing, which has been ordered by a federal court to be held solely for the purpose of obtaining additional vocational expert testimony. As to the questioning of the vocational expert who did appear at that hearing, furthermore, plaintiff's representative was allowed to, and indeed did, question the vocational expert at great length. See AR 808-21. And again, nothing precluded plaintiff or plaintiff's representative from presenting the additional testimony or statements plaintiff wished to make to the ALJ in written form. Thus, the Court finds no error on the part of the ALJ here.

II.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step five to determine whether he or she can do other work. See id. Therefore, it is what the claimant "can still do despite his or her limitations." Id.

REPORT AND RECOMMENDATION - 7

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ assessed plaintiff with the residual functional capacity to perform light work, "**compromised by the right upper extremity being used for assisting and limited to lifting 5 pounds, occasional contact with coworkers for core tasks, and no forceable extension of the right upper extremity.**" AR 661 (emphasis in original). Plaintiff argues this assessment does not include all of his mental functional limitations. Specifically, he asserts that because the ALJ's prior decision was reversed in part because the ALJ determination that he was precluded from public contact was inconsistent with the jobs the prior vocational expert identified, the ALJ should have adopted this same limitation in his most recent decision as well. But as explained above, the prior decision was not reversed on this basis.

Nor does the undersigned find the record necessarily supports a limitation consisting of no public contact. For example, while John Robinson, Ph.D., and Trevelyan Houck, Ph.D., two non-examining psychologists, did find plaintiff to be markedly limited in his ability to interact appropriately with the general public (see AR 481-82 (further commenting that plaintiff should perform work "which only makes modest social demands, not dealing with the general public")), Beal Essink, M.D., an examining psychiatrist, predicted only that plaintiff "would have a below average ability to interact appropriately with others, including co-workers and supervisors" (AR

REPORT AND RECOMMENDATION - 8

474), indicating such interaction was not precluded.

Nevertheless, the undersigned finds the ALJ erred in failing to explain why he did not include any limitation on interaction with the general public in his assessment of plaintiff's RFC, even though the ALJ expressly stated he was giving "[p]artial weight" to Dr. Essink's opinion that plaintiff "would have difficulties interacting with others," since it was "generally consistent with the record as a whole," as well as with plaintiff's testimony, conservative treatment history and activities of daily living. AR 663-64. Defendant argues the ALJ did properly accommodate Dr. Essink's limitation, by restricting plaintiff to work involving no more than occasional contact with coworkers for core tasks. But clearly Dr. Essink had more than co-workers in mind when he stated that plaintiff would have difficulty interacting appropriately "with others, *including* co-workers and supervisors." AR 474 (emphasis added).

Nor does the undersigned find the ALJ properly explained why he failed to include in his assessment of plaintiff's residual functional capacity, the opinion of Dr. Robinson and Dr. Houck that he should not deal at all with the general public. The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence in the record. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where such evidence is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence in the record "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, however, an ALJ's

REPORT AND RECOMMENDATION - 9

findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. In addition, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

On the other hand, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, furthermore, it "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. But the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). Rather, the ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. However, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial

REPORT AND RECOMMENDATION - 10

evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

With respect to Drs. Robinson and Houck, the ALJ stated he gave "[m]inimal weight" to their opinion that if he "was compliant with treatment he would be able to perform work activity, but substance abuse exacerbation of symptoms render[ed] him incapable of sustaining full time work," as it was "unsupported by the objective record" and by his ability to demonstrate "a high level of functionality, independently managing and maintaining home and financial affairs, with or without substance abuse." AR 663. The ALJ, however, did not at all address the opinion that plaintiff was precluded from public contact. Nor does the undersigned find it reasonable to infer from the ALJ's rejection of the specific opinion regarding substance abuse, that he also intended to reject their opinion regarding public contact. To the extent plaintiff also argues the ALJ erred in failing to explain why he was not adopting the other moderate to marked limitations found by Drs. Houck and Robinson not affected by substance abuse, the ALJ improperly failed to explain their exclusion as well for the same reasons. See AR 480-82; ECF #14, p. 14.

III. The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the

REPORT AND RECOMMENDATION - 11

hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the most recent hearing, the ALJ posed a hypothetical question to the vocational expert, containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity, except that the ALJ at first did include a restriction that plaintiff would be precluded from public contact. See AR 807. In response to that hypothetical question, the vocational expert identified other job categories that an individual who had those limitations, and who had the same age, education and work experience as plaintiff, would be able to perform. AR 807. In response to further questioning from plaintiff's counsel, the vocational expert went on to testify that each of the job categories he identified contained jobs involving at least some type of contact with the general public. See AR 810-16. When the ALJ then posed a revised hypothetical question – in which the no public contact limitation was changed to "casual contact with the public" being allowed – the vocational expert testified that there were jobs in the job categories he had previously identified, but qualified his testimony by stating that only "very superficial contact" would be involved. AR 816-17. Based on the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy at step five. See AR 666-67.

Plaintiff argues the ALJ erred by failing to include the limitations on public contact found

REPORT AND RECOMMENDATION - 12

by Drs. Essink, Houck and Robinson. As discussed above, the ALJ erred in failing to explain in his decision why he did not include any limitation on contact with the general public in his RFC assessment, although it is not clear – given the conflict between Dr. Essink's findings in this area and those of Dr. Robinsond and Dr. Houck – exactly to what extent such a limitation should have been adopted. Whether the record ultimately supports a no public contact limitation or one that is far less restrictive, it is not at all clear that the ALJ reasonably relied on the vocational expert's testimony to find plaintiff not disabled at step five.

If the record supports a no public contact limitation, this would seem to preclude the job categories identified by the vocational expert, as that expert testified that even the more specific jobs he had in mind involved at least some, albeit "very superficial," public contact. AR 816-17 (further testifying she was "reluctant to say that all positions would not include public contact," even though such may not be "typically required"); see also AR 810-15. It also is not at all clear whether in finding plaintiff had a "below average ability to interact appropriately with others," Dr. Essink had in mind the limitation to "casual contact with the public" subsequently posed by the ALJ or the "very superficial" level of contact identified by the vocational expert, or whether he had in mind something different altogether. Indeed, the limitation to "casual contact" and that to "very superficial" contact themselves do not appear to be consistent.

Accordingly, remand for further consideration of this issue is warranted. Plaintiff argues as well that the ALJ erred in not also including in his hypothetical question limitations relating to his ability to focus, concentrate, tolerate stress or interact with supervisors, as Dr. Essink found those areas also to be below average, and to persist, which Dr. Essink found was "severely below average." See AR 474. In his decision, the ALJ stated Dr. Essink's findings concerning "mental capacity," other than those regarding interacting with others, were "not supported by the record,"

REPORT AND RECOMMENDATION - 13

were "inconsistent with the treatment history" and were "contradicted by [plaintiff's] activities of daily living." AR 664. But the ALJ offered no specific details in regard to what portions of the record plaintiff's treatment history or activities of daily living contradicted Dr. Essink's findings. The ALJ, therefore, erred. See Lester, 81 F.3d at 830-31 (even when contradicted, examining physician's opinion can only be rejected for specific and legitimate reasons that are supported by substantial evidence).

Similarly, because the ALJ did not properly address the mental functional limitations and findings made by Dr. Robinson and Dr. Houck, it is unclear whether the exclusion thereof from the ALJ's hypothetical question was proper. On the other hand, the undersigned finds no error by the ALJ in failing to include in the hypothetical question a need to lie down during the day or to miss four or more days of work a month as found by his treating physician Charles P. Miller, M.D. See AR 563-64. With respect to those findings, the ALJ stated as follows:

> The record contains a representative created questionnaire completed on February 28, 2008 by treating physician Charles P. Miller, M.D., who notes that he had treated the claimant since June 6, 2005, a date subsequent to some of his treatment notes (24F). In filling in this questionnaire the physician indicates that the claimant is unable to engage in work activity and would miss 4 or more days of work per month. This opinion conflicts with the conservative treatment history and activities of daily living; offers insufficient objective evidence in support; does not address either substance abuse or noncompliance with treatment, factors of which this physician would be acutely aware of; and fails to consider the brief return to heavy work as a timber faller in 2006 by the claimant (23F). In contrast, in April 2006 this physician instructed the claimant to locate light work as a carpenter or supervisor, and on June 4, 2007 Dr. Miller reported that the claimant "is able to sit, walk, talk and use his left upper extremity well" and he advised the claimant to look for employment as a "timber cruiser," a position that does not require timber cutting (23F). As the records show no significant change in condition between June 2007 and February 2008, it is unknown how or why this physician now believes the claimant to be totally disabled. This opinion is not credible as it appears that impaired objectivity or advocacy for the claimant may be involved. As discussed above, the claimant did not notify this primary care provider of his alleged on the job injury occurring at the end of March 2006 or early April 2006, or about any alleged symptoms, until

REPORT AND RECOMMENDATION - 14

> January 2007. However, a treatment note from December 3, 2009 describes
> the claimant as recovered from his injury (30F). In the majority of treatment
> records from this source the physician makes multiple references to drug and
> alcohol use by the claimant, as well as narcotic pain medication seeking
> behavior and abuse (23F, 26F, and 30F). Conversely, in more recent
> assessments Dr. Miller has described the claimant as not abusing drugs or
> alcohol. There appear to be no comments from this source regarding the
> claimant's use/abuse of marijuana to treat alleged pain. In general,
> information from this informant is not given significant weight due to multiple
> conflicts, in particular with the level of treatment needed and the claimant's
> ordinary activities.

AR 664-65. Plaintiff has not challenged these reasons for discounting Dr. Miller's opinion as to his inability to work, including the need to lie down and to miss four or more days of work per week, nor does the undersigned find them to be improper.[1] Accordingly, the ALJ was not remiss in failing to include those limitations in either the residual functional capacity assessment that he adopted or the hypothetical question he posed to the vocational expert. Nor for that reason did the ALJ have to adopt the vocational expert testimony that an individual with those limitations could not engage in competitive employment. See AR 647-48. In addition, that testimony was provided at the second hearing held prior to the ALJ's issuance of his first decision, which is not currently before the Court for judicial review.

Lastly, plaintiff argues the ALJ failed to properly inquire of the vocational expert as to whether there existed any conflicts between his testimony and the information contained in the Dictionary of Occupational Titles ("DOT"). The ALJ may rely on vocational expert testimony that "contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). In addition, the ALJ has

---

[1] See Carmicle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

REPORT AND RECOMMENDATION - 15

the affirmative responsibility to ask the vocational expert about possible conflicts between his or her testimony and the information contained in the DOT. See Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR 00-4p, 2000 WL 1898704.

The undersigned agrees with defendant that the ALJ did ask the vocational expert if his testimony was consistent with the information about the jobs he identified contained in the DOT, to which the vocational expert replied that it was.[2] See AR 806. But before relying on evidence obtained from a vocational expert to support a finding of non-disability, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087; see also SSR 00-4p, 2000 WL 189704 *1. The ALJ also must explain in his or her decision how any such discrepancy or conflict was resolved. See SSR 00-4p, 2000 WL 189704 *4. Defendant argues the ALJ in this case did not have to elicit such an explanation from the vocational expert, because no discrepancy or conflict exists. The undersigned disagrees.

As he did with his assessment of plaintiff's residual functional capacity, the ALJ included in the hypothetical question he posed to the vocational expert a limitation on lifting or carrying of up to five pounds only with the right upper extremity. See AR 807. The DOT's description of the jobs identified by the vocational expert that plaintiff could do, however, do not indicate this limitation is contemplated. See id.; DOT 292.457-010 (newspaper deliverer); DOT 209.562-010 (office helper); DOT 920.687-126 (retail marker). Indeed, each of these jobs is described by the DOT as requiring the ability to perform light work, defined in relevant part as:

> Exerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly (Constantly: activity or

---

[2] Plaintiff is further incorrect in asserting that this was one of the errors that led to the prior decision being reversed, since, as discussed above, the record shows remand was ordered solely on the basis that additional vocational expert testimony was required.

REPORT AND RECOMMENDATION - 16

condition exists 2/3 or more of the time) to move objects. . . . Even though
the weight lifted may be only a negligible amount, a job should be rated Light
Work: (1) when it requires walking or standing to a significant degree; or (2)
when it requires sitting most of the time but entails pushing and/or pulling of
arm or leg controls; and/or (3) when the job requires working at a production
rate pace entailing the constant pushing and/or pulling of materials even
though the weight of those materials is negligible.

DOT 292.457-010; DOT 209.562-010; DOT 920.687-126; see also 20 C.F.R. § 404.1567(b), § 416.967(b).[3]

In arguing the above definition of light work reasonably includes the limitation in using the right upper extremity assessed by the ALJ, defendant points to the fact that the definition also states that a job can be rated as being light work, even though the amount of weight lifted may be negligible. But there is nothing in the DOT's description of the above three jobs to indicate that they were placed in the light work category because of the amount of walking, standing or sitting required, or because of a particular production pace. Defendant also notes that the DOT does not separate out jobs that require the use of both upper extremities from those that can be performed with only one upper extremity. But the more reasonable reading of the DOT is that this omission indicates the DOT does not contemplate such a distinction. That is, the DOT appears to presume use of both upper extremities is required.

Defendant goes on to assert that the vocational expert supplemented the generalized light definition of work contained in the DOT with her own experience. See AR 815-16. While it may be that the vocational expert relied in part on her own experience in identifying the jobs plaintiff could do, this does not constitute a "reasonable explanation" for the discrepancy noted above. In other words, the vocational expert's reliance on her own experience though perhaps appropriate

---

[3] Defining light work in relevant part as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."

REPORT AND RECOMMENDATION - 17

as a basis for her making her testimony reliable overall, does not explain *why* she felt – or what in her experience (if that indeed is what the vocational expert relied upon here) caused her to feel that – an individual with the right upper extremity limitation noted herein could perform the jobs the DOT again appears to presume requires the use of both upper extremities.

IV.     This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to plaintiff's residual functional capacity and his ability to perform other jobs existing in significant numbers in the national economy, remand for further administrative proceedings is appropriate.

REPORT AND RECOMMENDATION - 18

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the Court should reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **November 4, 2011**, as noted in the caption.

DATED this 18th day of October, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 19